IN THE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS COAL COUNCIL,<br>130 Friend Road<br>Washington, PA  15301<br><br>and<br><br>APPALACHIAN VOICES<br>589 West King Street<br>Boone, NC 28607<br><br>and<br><br>SIERRA CLUB<br>2101 Webster St., Suite 1300<br>Oakland, CA 94612,<br><br><br>Plaintiffs-Petitioners,<br><br>v.<br><br>Scott de la Vega<br>Acting Secretary of the Department of the Interior<br>1849 C Street N.W.,<br>Washington DC 20240,<br><br>Defendant. | Case No. 1:21-cv-195 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF,
AND PETITION FOR REVIEW**

## Introduction

1. This suit challenges the November 24, 2020 final action of David L. Bernhardt, then Secretary of the Interior (the "Secretary"), promulgating final

regulations pursuant to the Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. §§ 1201-1328 ("SMCRA").  *See* 85 Fed. Reg. 75150-75191 (November 24, 2020) (hereinafter "the Ten-day Notice rulemaking" or "TDN rulemaking"). The Secretary's rulemaking arbitrarily, capriciously, and unlawfully modified important provisions of the Secretary's prior rules governing the ten-day notice ("TDN") process and issuance of ten-day notices (TDNs) to state regulatory authorities regarding alleged violations of SMCRA, the Secretary's regulations, provisions of the approved state regulatory programs, or permits issued thereto.

2.  The text of the statute authorizing and mandating issuance of TDNs is found at 30 U.S.C. 1271(a)(1), which provides in pertinent part that:

> Whenever, on the basis of any information available to him, including receipt of information from any person, the Secretary has reason to believe that any person is in violation of any requirement of this Act or any permit condition required by this Act, the Secretary shall notify the State regulatory authority, if one exists, in the State in which such violation exists. If no such State authority exists <u>or the State regulatory authority fails within ten days after notification to take appropriate action to cause said violation to be corrected or to show good cause for such failure</u> and transmit notification to the Secretary, the Secretary shall immediately order Federal inspection of the surface coal mining operation at which the alleged violation is occurring unless the information available to the Secretary is a result of a previous Federal inspection of such surface coal mining operation.

(Emphasis added).

3. Congress enacted this provision as part of "a nationwide program to

protect society and the environment from the adverse effects of surface coal mining operations," 30 U.S.C. § 1202(a).

4. In enacting SMCRA, Congress meant, among other things, to "assure that the rights of surface landowners and other persons with a legal interest in the land or appurtenances thereto are fully protected from such operations," and to "assure that surface coal mining operations are so conducted as to protect the environment," 30 U.S.C. § 1202(b) and (d).

5. Throughout the legislative process that resulted in the enactment of SMCRA,  and in the debates on the earlier surface mining bills, Congress repeatedly voiced concern over the historic propensity of states to under-regulate and under-enforce environmental constraints on coal mining. In the House Committee Report on H.R. 11500, where the current language of 30 U.S.C. 1271(a)(1) originated, the intent that OSMRE exercise oversight authority to assure that the provisions of SMCRA were fully enforced, is clear. The Senate bill, S. 425, contained no provision for federal inspection and enforcement in non-imminent danger situations where the Secretary was acting in an "oversight" role, providing only that the Secretary notify the state regulatory authority, at which point the state was to proceed under the approved program. S. Rept. No. 93-402, 93rd Cong., 1st Sess. 17 (1973). The House provision, which prevailed at

Conference and which contained language identical in pertinent part to current 30 U.S.C. 1271(a)(1) reflected that skepticism:

> For a number of predictable reasons – including . . . the tendency of State agencies to be protective of local industry - State enforcement has in the past, often fallen short of the vigor necessary to assure adequate protection of the environment.
>
> * * * * *
>
> While it is confident that the delegation of primary regulatory authority to the States will result in fully adequate state enforcement, the Committee is also of the belief that a limited Federal enforcement role as well as increased opportunity for citizens to participate in the enforcement program are necessary to assure that the old patterns of minimal enforcement are not repeated.
>
> The mechanism fashioned by the Committee to meet the dual need of limited Federal enforcement oversight and citizen access is operative in both the interim period and after a State program has been approved. When the Secretary received information from any source that would give rise to a reasonable belief that the standards of the Act are being violated, the Secretary must respond by either ordering an inspection by Federal inspectors during the interim period, or, after the interim, notice to the States in the follow-up inspection that the State's response is inadequate.

H. R. Rept. No. 93-1072, at 111.

    6.  It is apparent that Congress intended that a federal inspection as a follow-up to the TDN would occur in all instances where the state had failed to take "appropriate" action, and that the state had a time-limited period in which to take action to cause the violation to be corrected (i.e. "appropriate" action). This is underscored later in the same Committee report:

> (2) Upon receiving such information [giving rise to a belief in the Secretary that a violation was occurring], the Secretary must notify the State o[f] such violations and within ten days the State must take action to have the violations corrected. If this does not occur, the Secretary <u>shall order</u> Federal inspection of the operation.

Id. at 143 (Emphasis added).

7. By interposing additional delay in taking federal inspection and enforcement action, and by sidestepping the mandatory TDN process where violations are more widespread due to systemic failures of the state regulatory authority to properly maintain, administer, and enforce SMCRA as it is obligated by law and regulation, the TDN rulemaking is arbitrary, capricious, inconsistent with law, and most egregiously, threatens public health, safety, and the environment by allowing potential violations of SMCRA, federal and state regulations, and permit conditions to continue unabated for lengthy periods of time.

## Jurisdiction and Venue

8. This Court has jurisdiction of this action pursuant to 30 U.S.C. § 1276(a)(1) (judicial review of national rulemaking under SMCRA), as well as 28 U.S.C. § 1331(a) (federal question). This Court may issue a declaratory judgment and grant further relief pursuant to 30 U.S.C. § 1276(b) and 28 U.S.C. §§2201 and 2202. Plaintiffs have a right to bring this action pursuant to 30 U.S.C. § 1276(a)(1)

and the final agency action is reviewable pursuant to 5 U.S.C. § 701 *et seq*. (Administrative Procedure Act) and 30 U.S.C. § 1276(a)(1) (SMCRA).

9. Venue is proper in this Court under 28 U.S.C. § 1391(e) and 30 U.S.C. Sec. 1276(a)(1). With respect to challenges to national rulemakings under SMCRA, venue lies exclusively in this Court pursuant to 30 U.S.C. § 1276(a)(1).

10. There is a present and actual controversy between the parties to this action. Plaintiffs have exhausted their administrative remedies and participated in the rulemaking process that culminated in the rulemaking challenged herein.

**Parties**

11. Plaintiff Citizens Coal Council ("CCC") is a nonprofit corporation existing under the laws of Pennsylvania. CCC is a nationwide association of grassroots individuals who reside in or visit America's coalfields. CCC's mission is to protect resources, including the homes, farms, businesses, and water supplies of its individual members, through advocacy of full compliance with all environmental laws pertaining to coal mining, and in particular, through full and fair implementation of SMCRA. Members of CCC, including Kimberly Jones, have utilized the TDN process in order to secure enforcement of permittee obligations where the state regulatory authority has failed to take action, and will continue to work with members to seek such notices in the many states in which CCC has coalfield members.

12. Plaintiff Appalachian Voices ("AV") is a regional nonprofit corporation incorporated in North Carolina. AV has over 1,100 members nationwide. AV has offices in North Carolina and Virginia, and its programmatic work focuses on the Appalachian region, including parts of Ohio, West Virginia, Virginia, Kentucky, Tennessee and Alabama.

13. AVs' mission is to protect the air, land, waters and communities of Central and Southern Appalachia. It is critical to the mission of AV to prevent negative impacts from coal mining to the water, land, and local residents in this region.

14. AV staff has worked with impacted community members to utilize the Ten-Day Notice process to address SMCRA violations at coal mines, when those violations were not adequately addressed by the state regulatory authority. AV also regularly informs people living near mines about various tools provided by Congress and available to them to address impacts from mining, including the Ten-Day Notice process. The Ten-Day Notice process is critical to the ability of AV and its members to ensure effective mining oversight by the federal Office of Surface Mining ("OSMRE") as contemplated by Congress.

15. Among those members of AV who are adversely affected and aggrieved, within the meaning of applicable law, by the final agency action complained of herein, is Erin Savage, who is both a member of and a staff person

for AV. Erin uses and enjoys for recreational purposes, and intends to continue to use, waterways that receive wastewater from coal mining operations that currently hold mine permits issued pursuant to SMCRA. Ms. Savage has utilized the Ten-day notice provisions of SMCRA in order to assist residents living under a mining operation in West Virginia, and through that process, was able to obtain a federal enforcement order directing that a replacement water supply be provided due to mining impacts on water supply. In that instance, the state regulatory authority declined to take appropriate action, finding that the water supply damage was not mine-related.

16. Plaintiff Sierra Club is a national nonprofit conservation organization incorporated in California, with more than 830,000 members and supporters nationwide. The Sierra Club maintains local chapters and members in each of the Appalachian states, including Kentucky, West Virginia, Virginia, Tennessee, and Pennsylvania; as well as in Alaska; the Illinois Basin; Colorado Plateau; Gulf Coast; Northern Rocky Mountains; and Great Plains. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; practicing and promoting the responsible use of the Earth's resources and ecosystems; educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The

Sierra Club has long worked to prevent the harm caused by mining coal across the United States, particularly in Appalachia and the West.

17.  The Sierra Club has repeatedly invoked OSMRE's TDN process, and otherwise participated in the TDN process, regarding alleged SMCRA violations at coal mines across the country. The Sierra Club has filed citizen complaints asking OSMRE to act under its Ten-Day Notice authority in Alaska, Ohio, Virginia, West Virginia, and Wyoming. The Sierra Club plans to continue to exercise its citizen participation rights under the Ten-Day Notice provisions to protect its members and their communities from the harmful impacts of coal mining.

18.  Numerous individual CCC, AV, and Sierra Club members depend upon the TDN process to protect their interests – as residents of, or visitors to, America's coalfields – from damage as the result of violations of SMCRA caused by either the failure of the permittee to comply with the law, regulations, and the permit, or the failure of the state regulatory authorities to properly maintain, administer, and enforce the approved program.

19. CCC, AV, the Sierra Club, and their members are suffering and will continue to suffer injury in fact as the result of the Secretary's November 24, 2020 TDN rulemaking due to the additional delays and unlawful exemptions created by the rulemaking to the mandated notice, inspection, and enforcement requirements of Section 1271(a) of SMCRA.

20. Plaintiff organizations and their members participated in the rulemaking procedures which preceded the Secretary's promulgation of the November 24, 2020 rules, including submission of written comments on the proposed regulations prior to the close of the comment period provided by the Secretary. Thus, Plaintiff organizations and their members have satisfied the requirement pursuant to 30 U.S.C. 1276(a)(1) that makes judicial review of a national rulemaking by the Secretary reviewable to any person who participated in the administrative proceedings and is aggrieved by the final agency action.

21. CCC, AV, and the Sierra Club have each utilized the TDN notice process on behalf of themselves and their members to assure the timely correction of violations of SMCRA, including violations caused by failure of permittees to follow applicable regulations and issued permits, violations caused by site-specific failures by state regulators to follow the statute and applicable regulations, and because of systemic failures of the state regulatory authorities to properly administer, maintain, and enforce SMCRA and the approved state programs in the permitting process, resulting in on-the-ground violations and damage to the environment.  Each organization will continue to use the process as the needs arise and are aggrieved by the impediments created in the final TDN rule to immediate notification and prompt correction of violations.

22. CCC, AV, and the Sierra Club bring this action on behalf of their members as well as themselves. Plaintiffs have organizational standing to sue on their own behalf, as well as representational standing to represent the interests of their members.

23. The interests of CCC, AV, and the Sierra Club and their members are squarely within the zone of interests protected by the Administrative Procedure Act and SMCRA, and the harm occasioned by the final rule is redressable through the relief sought herein, which is vacation of the final rules as arbitrary, capricious, or otherwise inconsistent with law.

24. Defendant David L. Bernhardt was the Secretary of the Interior who approved the final agency rule challenged herein.

25. Hon. Debra Haaland, has been named Secretary of the Interior by the President Biden, but has not yet been confirmed.  Scott de la Vega is, on information and belief, the Acting Secretary of the Department of Interior, and is sued only in his official capacity.

26.  The Secretary of Interior, whose official place of residence is Washington, D.C. is responsible for implementing all statutes, regulations, and programs administered by the United States Department of the Interior and its constituent agencies.

27.  The Secretary, acting through the Office of Surface Mining Reclamation and Enforcement ("OSM"), has a statutory mandate to promulgate national regulations implementing SMCRA, including regulations that implement the ten-day notice process.

28.  The Secretary is also charged with the responsibility of complying with the Administrative Procedure Act.

## Facts

29. On May 14, 2020, the Secretary proposed a rulemaking pursuant to SMCRA, purporting to be a "Clarification of Provisions Related to the Issuance of Ten-Day Notices to State Regulatory Authorities and Enhancement of Corrective Action for State Regulatory Program Issues." The proposed rule was published at 85 Fed. Reg. 28904 – 28917.

30. On June 15, 2020, prior to deadline which the Secretary established for submission of comments on the May 14, 2020 proposed rule, CCC, AV and the Sierra Club jointly filed on behalf of their members, along with numerous individuals and other organizations, (including a former Director of the Office of Surface Mining Reclamation and Enforcement) extensive comments on OSM's proposed rule changes.

31. Among other things, CCC, AV and the Sierra Club commented that adoption of numerous proposed rule changes would be arbitrary, capricious, or inconsistent with SMCRA, the Administrative Procedure Act, or both.

32. Despite the comments that CCC, AV, and the Sierra Club submitted, the Secretary on November 24, 2020, promulgated a final rule that adopted most of the provisions that CCC, AV, and the Sierra Club had opposed.

**Claims for Relief**

**Count I**

33. Plaintiffs incorporate by reference as if fully set forth below, Numerical Paragraphs 1-32 of this Complaint.

34. The Secretary's November 24, 2020 TDN rulemaking violates SMCRA and the Administrative Procedure Act in numerous respects, including but not limited to the following:

a. In direct violation of the plain language of 30 U.S.C. 1271(a)(1), which mandates that the Secretary, upon receipt of information from any person or on the basis of information available to him, shall notify the state regulatory authority and provide ten (10) days for that state regulatory authority to "take appropriate action to cause the violation to be corrected or to show good cause for such failure," the final TDN rule unlawfully interposes a new step prior to issuance of the TDN. Under the TDN rule, the Secretary would delay issuance of a TDN in order to

allow the state to transmit information that is by definition *not* available to the Secretary as contemplated by SMCRA but which would subsequently be produced and *made* available, thus indefinitely postponing the commencement of the mandated TDN process and delaying the state regulatory authority obligation to take action or show good cause. The purported "clarification" in fact creates a "pre-TDN" process inconsistent with both the Act and long-standing interpretation of Section 521 by the agency. The final TDN rule is inconsistent with the plain language of 30 U.S.C. 1271 in attempting to interject the undefined concept of "readily" as a modifier to the term "available information" as a justification for delaying issuance of a TDN indefinitely so as to allow transmittal of information by the state regulatory authority.

    b. The final TDN rule unlawfully creates an arbitrary and unlawful distinction nowhere found in SMCRA, between violations that result from a site-specific failure of a permittee to comply with permit conditions and obligations, and those violations that result from a site-specific failure by a state regulatory authority to properly maintain, administer, and enforce the approved state program. The distinction is wholly without support in the Act, is counter to decades of agency interpretation and practice, and attempts by administrative fiat to allow actual observed violations of the Act that result from a state's misadministration of the Act and approved program to continue unabated for an indefinite period of time

while the Secretary consults with the state regulatory authority under the newly crafted interim 30 C.F.R. 733 process regarding the problem.  All observed violations of the Act, the federal regulations, the approved state program, and the permit, are required to be immediately subject to enforcement action upon discovery. Congress, in 30 U.S.C. § 1271(a), directed OSM to take action to address violations by "any person," and the Secretary is without authority to exempt state regulators from the definition of "any person."  30 U.S.C. 1271(a) and (b) are not alternatives available to the Secretary for responding to on-the-ground violations; rather, pursuant to 30 U.S.C. 1271(a), each violation must be subject to federal inspection and enforcement where the state has failed to take "appropriate action" to cause the violation to be corrected or to show "good cause" for failure to do so, and where the violation is the result of the State failure to enforce such State program or any part thereof effectively, the Secretary is obligated to utilize the 30 U.S.C. 1271(b) process to address that failure.

    c.  In direct violation of 30 U.S.C. 1271(a), the Secretary proposes to make discretionary what is a mandatory obligation to issue a federal enforcement order where an observed violation of the Act, federal or state regulation, or approved state program is determined by the Secretary to exist. Contrary to the suggestion that under revised 30 C.F.R. 733.12(d) that OSMRE "may still take a direct site-

specific enforcement action," 85 Fed. Reg. 75151, the agency is mandated by SMCRA to do so in all cases.

      d. The final TDN rule impermissibly attempts to amend 30 U.S.C. 1271(a) by modifying "available" to mean "readily available," and then defining "readily available" to include information supplied by third parties subsequent to receipt of a citizen complaint alleging a violation. The final TDN rule is unlawful and inconsistent with SMCRA and introduces ambiguity where none exists.

      e. The final TDN rule creates out of whole cloth an "enhancement to the existing 30 C.F.R. Part 733 process" that is inconsistent with the provisions of 30 U.S.C. 1271 and which allow the Secretary and state regulatory authority to sidestep the statutory requirements of 30 U.S.C. 1271(b) in favor of "addressing state regulatory program issues early and promptly resolving the issues" <u>prior</u> to or in lieu of initiation of the current 30 C.F.R. 733 process mandated by SMCRA. If the Secretary wishes to rewrite the clear provisions of 30 U.S.C. 1271(a) and (b), a proposal to Congress rather than an overreaching final rulemaking, is the appropriate vehicle. The interposing of new procedures prior to federal action pursuant to 30 U.S.C. 1271(b) is contrary to law and in excess of the agency's authority. The process mandated by Congress does not admit of the creation by the Secretary of a new intermediate process for resolving a ''State regulatory program

issue'' short of notification of intent to commence proceedings to withdraw all or part of a State regulatory program under 30 U.S.C. 1271(b).

    f.  The replacement of "shall" with "will" or "must" impermissibly rewrites the plain language of SMCRA.  The term "shall" as utilized in SMCRA is not ambiguous, and the legislative history makes clear that the term is mandatory.  The agency is without authority to amend, vitiate, or modify the language of the statute.

    g.  Removal of the phrase "if true" reflects a substantive change in the agency interpretation of its obligation to act when receiving information from a citizen's complaint that *if true* would constitute a violation.  The agency has failed to provide a sufficient and reasoned basis for rejection of the contemporaneous interpretation of the statutory requirement, and in failing to do so has acted arbitrarily and capriciously.

    h.  The promulgation of the definitions of "action plan" and "state regulatory program issue," as proposed to be utilized in the TDN final rule, are arbitrary, capricious, or otherwise inconsistent with law inasmuch as they are intended to support implementation of a new intermediate step prior to 30 U.S.C. 1271(b) that is inconsistent with SMCRA.

    i.  The interpretation in the final TDN rule that "appropriate action to cause the violation to be corrected" could include actions *other than* issuance of a notice of violation by either the state regulatory authority or OSMRE, is inconsistent with

law and with long-standing agency interpretation of the Act and its obligations thereunder, and is arbitrary, capricious, and otherwise inconsistent with law.

j.  The TDN final rule is arbitrary, capricious, or otherwise inconsistent with law.

## Count II

35.  Plaintiffs incorporate by reference as if fully set forth below, Numerical Paragraphs 1-34 of this Complaint.

36.  The Secretary acted arbitrarily, capriciously, and in a manner otherwise inconsistent with law, in failing to conduct an environmental analysis of the proposed rule in a manner consistent with the requirements of the National Environmental Policy Act (NEPA) and regulations of the Council on Environmental Quality and of the Department of the Interior.  Use of a "categorical exclusion" to avoid the human health, safety, and environmental implications of interposing delay in both the exercise of federal authority under 30 U.S.C. 1271(a) and 30 U.S.C. 1271(b), is inconsistent with the agency's obligations under NEPA. Despite the characterization of this substantive rulemaking as being one that is "administrative and procedural" in nature, the effect of making discretionary federal enforcement action for violations caused by "state regulatory program issues," coupled with delays created in issuance of TDNs and in commencement of 30 U.S.C. 1271(b) procedures, will allow violations to go unabated for indefinite

periods of time. The potential substantive impacts on abatement of violations occasioned by these substantive changes to existing regulations requires development of environmental documentation under NEPA.

## Prayer for Relief

Wherefore, for the reasons stated above, CCC, AV, and the Sierra Club respectfully request that this Court:

1. Determine and declare that the portions of the November 24, 2020 TDN rulemaking identified in Paragraph 34 of this complaint violate SMCRA;

2. Declare that the portions of the November 24, 2020 TDN rulemaking identified in Paragraph 34 of this complaint are arbitrary, capricious, an abuse of discretion, and are otherwise inconsistent with law, in violation of the Administrative Procedure Act;

3. Enter an order expressly vacating the portions of the November 24, 2020 TDN rulemaking identified in Paragraph 34 of this complaint;

4. Enjoin the Secretary and those acting under his authority from implementing the portions of the November 24, 2020 TDN rulemaking identified in Paragraph 34 of this complaint in any manner whether by rule or by policy;

5. Determine and declare that the failure of the Secretary to have developed environmental documentation and to perform environmental analysis as required by NEPA was arbitrary, capricious, and otherwise inconsistent with law;

6. Award Plaintiffs their costs, disbursements, and reasonable attorneys' fees; and

7. Grant such other relief as the Court deems just and appropriate.

Respectfully submitted,

/s/   Matthew E. Miller
MATTHEW E. MILLER
D.C. Bar # 1015222
Staff Attorney, Sierra Club
2528 California St
Denver, CO 80205
Tele: 517-230-7420
matthew.miller@sierraclub.org